# EXHIBIT A

*25-000013397*

CHIEF FINANCIAL OFFICER
JIMMY PATRONIS
STATE OF FLORIDA

APRIL RANERI

PLAINTIFF(S)

VS.

WESTERN AND SOUTHERN LIFE ASSURANCE
COMPANY

DEFENDANT(S)
_____/

SUMMONS, COMPLAINT

| | |
|---|---|
| CASE #: | 2025-CA-000294-O |
| COURT: | 9TH JUDICIAL CIRCUIT |
| COUNTY: | ORANGE |
| DFS-SOP #: | 25-000013397 |

# <u>NOTICE OF SERVICE OF PROCESS</u>

NOTICE IS HEREBY GIVEN of acceptance of Service of Process by the Chief Financial Officer of the State of Florida. Said process was received in my office by ELECTRONIC DELIVERY on Wednesday, January 15, 2025 and a copy was forwarded by ELECTRONIC DELIVERY on Thursday, January 16, 2025 to the designated agent for the named entity as shown below.

WESTERN AND SOUTHERN LIFE INSURANCE COMPANY
DONNA MOCH
1200 SOUTH PINE ISLAND ROAD
PLANTATION, FL 33324

**\*Our office will only serve the initial process (Summons and Complaint) or Subpoena and is not responsible for transmittal of any subsequent filings, pleadings, or documents unless otherwise ordered by the Court pursuant to Florida Rules of Civil Procedure, Rule 1.080.**

*Jimmy Patronis*

Jimmy Patronis
Chief Financial Officer

IMRAN MALIK
1061 MAITLAND CENTER COMMONS
MAITLAND, FL 32751, FL 32751

TG1

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN AND
FOR ORANGE COUNTY, FLORIDA

CASE NO.: 2025-CA-000294-O

APRIL RANERI,

     **Plaintiff,**

vs.

**WESTERN-SOUTHERN LIFE
ASSURANCE COMPANY,**

     **Defendant.**

SUMMONS

***THE STATE OF FLORIDA***
**TO EACH SHERIFF OF THE STATE:**

YOU ARE HEREBY COMMANDED to serve this Summons, a copy of the Complaint in this
action on **WESTERN-SOUTHERN LIFE ASSURANCE COMPANY,** pursuant to F.S.
48.151

***By Serving:***

          **WESTERN-SOUTHERN LIFE ASSURANCE COMPANY**
             c/o Insurance Commissioner
               State of Florida
              PROCESS SECTION
             200 East Gaines Street
            Tallahassee, Florida 32399

Each defendant is required to serve written defenses to the Complaint or Petition on Imran
Malik, Counsel for the Plaintiffs, **Malik Law, P.A.,** 1061 Maitland Center Commons Blvd.,
Maitland, FL 32751 within twenty (20) days after service, of this summons on that defendant
exclusive of the day of service, and to file the original of the Defenses with the clerk of this
Court either before service on the Plaintiff attorney or immediately thereafter. If a defendant
fails to do so, a Default will be entered against that Defendant for the relief demanded in the
complaint or petition.

CLERK OF THE COURT

BY: _____/s/ Ricardo Silva_____, Deputy Clerk DATE: ____1/15/_____, 2025.



Tiffany Moore Russell, Clerk of Courts
Civil Division
425 N Orange Ave
Room 350
Orlando, Florida 32801

# IMPORTANTE

Usted ha sido demandado legalmente, Tiene veinte (20) dias, contados a Partir del recibo de esta notificacion, para contestar la demanda adjunto, por escrito, y presentarla ante este tribunal. Una llamada telefonica no lo rotegera; si usted desea que el tribunal considere su defensa, debe presentar su respuesta por escrito, incluyendo el numero del caso y los nombres de las partes interesadas en dicho caso. Si usted no contesta la demanda a tiempo, pudiese perder el caso y podria ser despojado de sus ingresos y propiedades, o privado de sus derechos, sin previo aviso del tribunal. Existen otros requisitos legales, Si lo desea, puede usted consultar a un abogado immediatament. Si no conoce a un abogado, puede llamar a una de las oficinas de asistencia legal que aparencen en la guia telefonica. Si desa responder a la demanda por su cuenta, al mismo tiempo en que presenta su respuesta ante al tribunal, debera usted enviar por correo o entregar una copia de su respuesta a la persona denominada abajo como "Plaintiff/Plaintiff's Attorney." (Demandate o Abogado del Demanadante).

# IMPORTANT

Des poursuites judiciaires ont ete enterprises contre ous. Vous avez 20 jours consecutifts a partir de la date de l'assignation de cette citation pour deposer une reponse ecrite a la plainte ci-jointe aupres de ce Tribunal. Un simple coup de telephone est insuffisant pour vous proteger; vous etes oblige de deposer votre response ecrite, avec mentin du numero de dossier ci-dessus et du nom des paties nommees isi, si vous souhaitez que le Tribunal entende votre cause. Si vous ne deposez pas votre response ecrite dans le relai requis, vous risquez de perdre la cause ainsi que votre salaire, votre argent, et vos biens peuvent etre saisis par la suite, sans aucun preavis ulterieur de Tribunal. Il y a d'autres obligations juridiques et vous pouvez reqerir les services immediats d'un avocat. Si vous ne connaissez pas d'avocat, vous pourriez telephoner a un service de reference d'avocats ou a un bureau d'assistance juridique (figurant a l'annuaire de telephones).
Si vous choisissez de deposer vous-meme une reponse ecrite, il vous faudra egalement, en meme temps que cette formalite, faire parvenir ou expedier une copie au carbone ou une photocopie de votre reponse ecrite au "Plaintiff/Plaintiff's Attorney" (Plaignant ou a son avocat) nomme ci-dessous.

IN THE CIRCUIT COURT OF THE
NINTH JUDICIAL CIRCUIT, IN AND
FOR ORANGE COUNTY, FLORIDA

CASE NO.:

APRIL RANERI,

      Plaintiff,

vs.

WESTERN-SOUTHERN LIFE
ASSURANCE COMPANY,

      Defendant.

_____/

## COMPLAINT

Plaintiff, APRIL RANERI (hereinafter "Plaintiff" or "Beneficiary"), hereby sues

Defendant, WESTERN-SOUTHERN LIFE ASSURANCE COMPANY (hereinafter "Defendant"

or "Insurer"), and alleges as follows:

## GENERAL ALLEGATIONS

1.     This is an action for damages that exceed Fifty Thousand and 00/100 Dollars

($50,000.00), exclusive of interest, costs and attorney's fees.

2.     The Plaintiff is an individual who at all times material hereto has resided in Orange

County, Florida.

3.     The Defendant is a foreign corporation who, at all times material hereto, was

authorized to engage in and was engaging in the life insurance business in Florida. Defendant's

principal place of business is located in Cincinnati, Ohio.

4.     Venue is proper in Orange County, Florida because the contract which forms the subject matter of this lawsuit, was executed in Orange County, Florida.

5.     All conditions precedent to the filing of this lawsuit have occurred, have been waived or have been performed.

6.     On or about November 7, 2023, in consideration of an annual premium of $697.08 paid in monthly installments by decedent, Michael Raneri (hereinafter "Insured"), Defendant issued its written policy of insurance on the life of the Insured in the amount of $350,000.00.

7.     Insured's policy (hereinafter the "Policy"), no. J100011769, named Plaintiff, insured's spouse, as the sole beneficiary. A copy of the Policy and application for insurance are attached to this Complaint as Exhibit A.

8.     Under the terms of the Policy, Defendant promised to pay to Plaintiff the sum of $350,000.00 on due proof of the death of Insured during the term of the Policy.

9.     On February 12, 2024, while the Policy was in full force and effect, the Insured died of anoxic encephalopathy, sudden cardiac death of unknown etiology, and hypertension in such circumstances as to come within the terms of the Policy and to render Defendant liable to pay Plaintiff as beneficiary the sum of $350,000.00.

10.     On March 18, 2024, Plaintiff gave Defendant due notice and proof of the death of Insured. A copy of the notice and proof of death provided to defendant is attached to this complaint as Exhibit B. As such, Plaintiff has complied with all conditions precedent in order to recover under the Policy. Plaintiff has thus demanded payment of the $350,000.00 due, but Defendant has refused and still refuses to pay Plaintiff any part of that sum.

11.     Plaintiff has retained the undersigned counsel in connection with this matter and has become obligated to counsel for the payment of reasonable attorney fees in connection with the prosecution of this action and are entitled to recover attorney's fees pursuant to applicable Florida law.

12.     This suit was filed more than 60 days after proof of the claim was duly filed with Defendant.

## COUNT I – BREACH OF CONTRACT

13.     Plaintiff reincorporates the allegations contained within paragraphs 1 through 12, above, as though fully set forth herein.

14.     It is undisputed that the Insured and the Defendant entered into a written contract, the Policy, wherein the Defendant agreed to pay the Insured's designated Beneficiary the sum of $350,000.00 upon the Insured's death.

15.     Plaintiff timely informed Defendant of the death of the Insured, provided all requested documentation related thereto, and in all other ways satisfied any and all post-loss obligations.

16.     By contrast, the Defendant has failed to make payment for any part of the amount due to the Plaintiff.  As a result thereof, the Insurance Company has breached the Policy..

17.     As a direct and proximate result of the Defendant's breach of the Policy, the Plaintiff has sustained damages.

WHEREFORE, Plaintiff requests judgment against Defendant for damages, together with reasonable attorney fees, costs, and any other and further relief as the court may deem proper in the circumstances.

## <u>COUNT II – DECLARATORY RELIEF</u>

18.     The Plaintiff, APRIL RANERI, incorporates the allegations contained in paragraphs 1 through 12, above, as though fully set forth herein, and for a further cause of action alleges:

19.     This is an action for declaratory relief pursuant to Chapter 86, Florida Statutes.

20.     Plaintiff brings this action for declaratory relief against Defendant as a result of Defendant's application of ambiguous and unclear contractual terms relative to the handling of the dispute at issue.

21.     On November 7, 2023, the Insured and the Defendant entered into the Policy referenced in Count I.  In exchange for payment of the aforementioned premium, Defendant agreed to pay Plaintiff a benefit of $350,000.00 upon proper notification of the Insured's death.

22.     On February 12, 2024, insured Michael Raneri died.

23.     On or about March 18, 2024, Plaintiff notified Defendant of the Insured's death and sought payment of the referenced death benefit.

24.     On September 4, 2024, Defendant denied the Plaintiff's claim, citing the incontestability period and alleging that the Insured was not truthful about his weight on the November 7, 2023 policy application.  A copy of Defendant's denial letter is attached hereto as Exhibit C. Based on information pertaining to a date other than the policy application date, Defendant alleged that the purported omission constituted a "material misstatement" that warranted recission of the Policy.

25.     Fla. Stat. § 86.011 creates a right to declaratory judgment when a question of construction or validity arises under a contract and/or instrument. The purpose of a declaratory

judgment is to afford relief from a person's insecurity and uncertainty with respect to their rights, status, or other equitable or legal relations.

26.    There is a bona fide, actual, present need for a declaratory judgment because the parties are uncertain of their rights as they pertain to the denial of Plaintiff's claim to the Policy's death benefit.

27.    The Plaintiff believes that the death benefit was due and owing upon proper notification of the Insured's death, inasmuch as (1) the Defendant's denial is based on information it obtained from medical records dated nearly three (3) months prior to the November 7, 2023 application date, and (2) a forty-one (41) pound difference in the Insured's weight as seen in certain medical records versus what was indicated by the Insured in the application for insurance did not constitute a "material misstatement that warrants recission of the policy." However, Plaintiff is in doubt or uncertain as to the existence or non-existence of her right to relief and has an actual, practical, and present need for a declaration of rights by this Court.

28.    There is a bona fide, actual, present need for a declaratory judgment because the parties would like to resolve the dispute but disagree as to whether the circumstances afford the relief requested.

29.    As a direct and proximate result of the foregoing conflicting positions of the parties, there is an actual bona-fide controversy between the parties which requires judicial interpretation.

30.    The purpose of this declaratory decree, made pursuant to Fla. Stat. § 86.011, is to obtain a judicial interpretation of the Agreement, as it relates to the facts herein that determines that the relief requested is owed to Plaintiff.

31.    Plaintiff has been obligated to engage the undersigned attorneys for the prosecution of this action and is entitled to a reasonable attorney's fee pursuant to Fla. Stat. § 86.121 and/or section 23(c) of the Agreement.

WHEREFORE, the Plaintiff, APRIL RANERI, respectfully requests that this Court grant Declaratory judgment for the Plaintiff, as follows:

1.    To declare that the death benefit referenced in the Policy is enforceable, and that Defendant must pay Plaintiff said death benefit.
2.    To award the Plaintiff a reasonable attorney's fee pursuant to applicable Florida law;
3.    To award the Plaintiff costs; and
4.    To order such further relief as deemed just and proper in the circumstances.

Dated this ____ day of January, 2025.

/s/ Matthew P. Tabakman
**MATTHEW P. TABAKMAN, ESQ.**
Florida Bar No.: 0558141
**Malik Law, PA**
1061 Maitland Center Commons Boulevard
Maitland, Florida 32751
Tel:    407-500-1000
Email: mtabakman@imaliklaw.com
Email: alexandria@imaliklaw.com
Email: pleadings@imaliklaw.com



Rev. 10/01/2020


Western & Southern
Financial Group

| FACTS | WHAT DOES WESTERN & SOUTHERN FINANCIAL GROUP DO WITH YOUR PERSONAL INFORMATION? |
|---|---|
| Why? | Financial companies choose how they share your personal information. Federal law gives consumers the right to limit some but not all sharing. Federal law also requires us to tell you how we collect, share, and protect your personal information. Please read this notice carefully to understand what we do. |
| What? | The types of personal information we collect and share depend on the product or service you have with us. This information can include:<br>• Social Security number and address<br>• Account balances and transaction history<br>• Assets, income, and credit history |
| How? | All financial companies need to share customers' personal information to run their everyday business and provide applicable products and services. In the section below, we list the reasons financial companies can share their customers' personal information; the reasons Western & Southern Financial Group chooses to share; and whether you can limit this sharing. |

| Reasons we can share your personal information | Does Western & Southern Financial Group share? | Can you limit this sharing? |
|---|---|---|
| For our everyday business purposes— such as to process your transactions, maintain your account(s), respond to court orders and legal investigations, or report to credit bureaus | Yes | No |
| For our marketing purposes— to offer our products and services to you | Yes | No |
| For joint marketing with other financial companies | Yes | No |
| For our affiliates' everyday business purposes— information about your transactions and experiences | Yes | No |
| For our affiliates' everyday business purposes— information about your creditworthiness | Yes | Yes |
| For our affiliates to market to you | Yes | Yes |
| For nonaffiliates to market to you | No | We don't share. |

| To limit our sharing of the applicable items above | • Call (866) 590-1349 and follow the instructions provided<br><br>Please note:<br><br>If you are a *new* customer, we can begin sharing your information 30 days from the date we sent this notice to you. When you are *no longer* our customer, we continue to share your information as described in this notice.<br><br>However, you can contact us at any time to limit our sharing of the applicable items above. |
|---|---|
| Questions? | Call (800) 926-1993. |

EF-056-2010

**EXHIBIT A**

Page 2

| Who we are | |
|---|---|
| Who is providing this notice? | Companies owned by Western & Southern Financial Group, Inc. A list of companies is located at the end of this notice. |

| What we do | |
|---|---|
| How does Western & Southern Financial Group protect my personal information? | To protect your personal information from unauthorized access and use, we use security measures that comply with federal law. These measures include computer safeguards and secured files and buildings. Except as authorized by you in writing, we limit access to your information to those who need it to do their jobs or service your account. |
| How does Western & Southern Financial Group collect my personal information? | We collect your personal information, for example, when you<br>• Give us your contact information<br>• Open an account<br>• Provide account information<br>• Purchase products or services from us<br>• Seek advice about your investments<br>We may also collect your personal information from others, such as credit bureaus, affiliates, or other companies. |
| Why can't I limit all sharing? | Federal law gives you the right to limit only<br>• Sharing for affiliates' everyday business purposes—information about your credit worthiness<br>• Affiliates from using your information to market to you<br>• Sharing for nonaffiliates to market to you<br>State laws and individual companies may provide you additional rights to limit sharing. See below for more on your rights under state law. |
| What happens when I limit sharing for an account I hold jointly with someone else? | Your choices will apply to everyone on your account—unless you tell us otherwise. |

| Definitions | |
|---|---|
| Affiliates | Companies related by common ownership or control. They can be financial and nonfinancial companies.<br>• Our affiliates include companies with the Western & Southern name. Visit our website at https://www.westernsouthern.com/about/family-of-companies for a list of affiliated companies. |
| Nonaffiliates | Companies not related by common ownership or control. They can be financial and nonfinancial companies.<br>• We do not share with nonaffiliates so they can market to you. |
| Joint marketing | A formal agreement between nonaffiliated financial companies that together market financial products or services to you.<br>• Our joint marketing partners include other financial service companies, such as banks. |

**Other important information**

You may have other privacy protections under applicable state laws. To the extent these state laws apply, we will comply with them when we share information about you.

For **California residents**: In accordance with California law, we will not share information we collect about you except as permitted by California law. This may include: for our everyday business purposes, for marketing our products and services to you, and as permitted by law or otherwise authorized by you, including, for example, to service your account. We limit sharing among our affiliates to the extent required by California law. Types of information we collect, in addition to what is described in this notice, may include, but is not limited to: financial information, demographic information, medical information, and employment information. We do not sell your information, nor do we share information with nonaffiliate companies. Per the California Consumer Privacy Act, you have the right to: access your personal information that is collected, request that we delete your personal information pursuant to this Act, request information about how your information is shared and what it is used for, know with what third parties your information is shared, and opt-out of the sharing of your personal information. To exercise any of these rights, you may visit our website or call customer service to submit a request. For additional information regarding our privacy policies, visit our website or call (800) 926-1993.

For **Vermont residents**: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures. For additional information concerning our privacy policies, visit our website or call (800) 926-1993.

EF-056-2010

**Page 3**

For Nevada residents: This notice is provided to you pursuant to state law. We may contact you by telephone to offer additional financial products that we believe may be of interest to you. You have the right to opt out of these calls by adding your name to our internal do-not-call list. To opt out of these calls, or for more information about your opt out rights, please contact our customer service department by telephoning (866) 590-1349. Nevada state law requires us to provide you with the following contact information: You may contact the Nevada Attorney General for more information about your opt out rights by calling 702-486-3132, emailing aginfo@ag.nv.gov, or by writing to: Office of the Attorney General, Nevada Department of Justice, Bureau of Consumer Protection, 100 North Carson Street, Carson City, NV 89701-4717.

For insurance customers in AZ,CA, CT, GA, IL, ME, MA, MN, MT, NV, NJ, NM, NC, ND, OH, OR, and VA only: The term "Information" means information we collect during an insurance transaction. We will not use your medical information for marketing purposes without your consent. We may share your Information with others, including insurance-support organizations, insurance regulatory authorities, law enforcement, and consumer reporting agencies, without your prior authorization as permitted or required by law. Information obtained from a report prepared by an insurance-support organization may be retained by the insurance-support organization and disclosed to other persons.

**Who is providing this notice?**

The Western & Southern Financial Group , Inc. member companies are Columbus Life Insurance Company, The Western and Southern Life Insurance Company, Western-Southern Life Assurance Company, The Lafayette Life Insurance Company, Gerber Life Agency, LLC, Integrity Life Insurance Company, National Integrity Life Insurance Company, W&S Financial Group Distributors, Inc., IFS Financial Services, Inc., Touchstone Securities, Inc., Touchstone Advisors, Inc., Western & Southern Agency, Inc., W&S Brokerage Services, Inc., Eagle Realty Capital Partners, LLC, and Eagle Realty Group, LLC.



## Western & Southern Life
A member of Western & Southern Financial Group

## Individual Term Life Insurance Policy

Issued by

## Western-Southern Life Assurance Company

400 Broadway, Cincinnati, Ohio 45202-3302 / www.meetfabric.com

PLEASE READ YOUR POLICY CAREFULLY. This policy is a legal contract between You and Western-Southern Life Assurance Company. This policy is issued in consideration of Your statements in the application and the payment of the first premium. If You have any questions about Your policy or for assistance in resolving complaints, please visit Our service portal at www.meetfabric.com or call Us at: 917-765-8929.

_Secretary_

_President and
Chief Executive Officer_

---

### YOUR RIGHT TO CANCEL THIS POLICY

THIS POLICY MAY BE RETURNED WITHIN 14 DAYS FROM THE DATE YOU RECEIVED IT, WITH ALL PREMIUMS BEING REFUNDED, BY RETURNING IT TO US AT THE ADDRESS SHOWN ABOVE OR TO ANY AGENT OF OURS.

---

### Individual Term Life Insurance Policy
Level Premiums Guaranteed during the Initial Term Period
Yearly Renewable Premiums thereafter to age 85
Renewal Premiums subject to change as described in the Policy
Non-Participating (This policy does not pay dividends)
Non-Convertible



**Western-Southern Life Assurance Company**
400 Broadway
Cincinnati, OH 45202-3302
www.meetfabric.com

## Application for Individual Life Insurance

### POLICY INFORMATION

**POLICY TYPE**
[✓] Individual Level Term Life Insurance

**TERM**
[ ] 10 Year  [✓] 15 Year  [ ] 20 Year  [ ] 25 Year  [ ] 30 Year

**DEATH BENEFIT**
$ 350000

**PAYMENT FREQUENCY**
[✓] Monthly

### APPLICANT INFORMATION

**NAME**
Michael                          Raneri

**DATE OF BIRTH** (MM/DD/YYYY)
[redacted]

**GENDER ASSIGNED AT BIRTH**
[■] Male  [ ] Female  [ ] Inter-Sex

**GENDER IDENTITY (Optional)**
[✓] Man  [ ] Woman  [ ] Non-Binary  [ ] Agender  [ ] Genderqueer  [ ] Gender Non-Conforming

[ ] Transgender  [ ] Prefer not to answer

**TELEPHONE NUMBER** (include area code)
[redacted]

**EMAIL ADDRESS**
[redacted]

## APPLICANT INFORMATION - Continued

**HOME ADDRESS (No PO Box)**                    **Line 2**

10912 High Bush Ct

**CITY**                                         **STATE**    **ZIP**

Orlando                                          FL           32825

**CITY**                                         **STATE**    **ZIP**

**WHERE WERE YOU BORN?**

NM

Are you a United States citizen?   ☑ Yes   ☐ No    **SOCIAL SECURITY NUMBER**

▮▮▮▮▮▮▮▮▮

## THIRD-PARTY NOTIFICATION

Do you want to name someone else we can contact about any potential lapse in your policy?   ☑ Yes   ☐ No

**NAME**

April Raneri

**EMAIL ADDRESS**

▮▮▮▮▮▮▮▮

## EXISTING INSURANCE

Do you have pending or existing life insurance or annuities, not including through an employer?

☐ Pending    ☐ Existing    ☐ Both    ☑ None

If pending:

**PENDING AMOUNT**
$ _____

**INSURER**
_____

Do you expect to purchase a pending policy?    ☐ Yes    ☐ No

If existing:

**EXISTING AMOUNT**
$ _____

**INSURER**
_____

Do you intend to replace, discontinue or make changes to existing life insurance?    ☐ Yes    ☐ No

**LIST ALL LIFE INSURANCE IN FORCE (INCLUDING ANNUITIES):**

| NAME OF COMPANY | POLICY NUMBER | ISSUE YEAR | AMOUNT |
|---|---|---|---|
| | | | $ |
| | | | $ |
| | | | $ |
| | | | $ |

## BENEFICIARY INFORMATION

Your beneficiary(ies) must be a person or trust. Primary and Contingent beneficiaries must be designated in whole numbers and add up to 100%.

**NAME**
April Raneri

**TELEPHONE NUMBER**   (include area code)

| RELATIONSHIP TO OWNER | BENEFICIARY TYPE | PERCENTAGE |
|---|---|---|
| Spouse | ☑ Primary   ☐ Contingent | 100 % |

## BENEFICIARY INFORMATION - Continued

Your beneficiary(ies) must be a person or trust. **Primary and Contingent beneficiaries must be designated in whole numbers and add up to 100%.**

**NAME**

**TELEPHONE NUMBER** (include area code)     **SOCIAL SECURITY NUMBER/TIN**     **DATE OF BIRTH** (MM/DD/YYYY)

**RELATIONSHIP TO OWNER**     **BENEFICIARY TYPE**     **PERCENTAGE**
☐ Primary    ☐ Contingent    %

**NAME**

**TELEPHONE NUMBER** (include area code)     **SOCIAL SECURITY NUMBER/TIN**     **DATE OF BIRTH** (MM/DD/YYYY)

**RELATIONSHIP TO OWNER**     **BENEFICIARY TYPE**     **PERCENTAGE**
☐ Primary    ☐ Contingent    %

**NAME**

**TELEPHONE NUMBER** (include area code)     **SOCIAL SECURITY NUMBER/TIN**     **DATE OF BIRTH** (MM/DD/YYYY)

**RELATIONSHIP TO OWNER**     **BENEFICIARY TYPE**     **PERCENTAGE**
☐ Primary    ☐ Contingent    %

**NAME**

**TELEPHONE NUMBER** (include area code)     **SOCIAL SECURITY NUMBER/TIN**     **DATE OF BIRTH** (MM/DD/YYYY)

**RELATIONSHIP TO OWNER**     **BENEFICIARY TYPE**     **PERCENTAGE**
☐ Primary    ☐ Contingent    %

## PERSONAL INFORMATION

Are you currently employed?    ☑ Yes    ☐ No

What's your occupation?

**OCCUPATION**
dispatcher

What's your annual income?

**ANNUAL INCOME**
$ 195000

If you are not actively employed, what is the reason for your unemployment?

**ANNUAL HOUSEHOLD INCOME**
$

1. Do you have a valid driver's license?    ☑ Yes    ☐ No

   If Yes, has your driver's license been suspended or revoked in the last 5 years?    ☐ Yes    ☑ No

   If Yes, please specify why and when.

   **DRIVER'S LICENSE NO.**

   **STATE**
   FL

2. In the last 2 years, have you or do you intend in the next year to engage in (select all that apply):

   ☐ Piloting an aircraft    ☐ Sky diving or parachuting    ☐ Hang-gliding

   ☐ Ultralight flying    ☐ BASE jumping    ☐ Skin or scuba diving to a depth of greater than 100 feet or cave or ice diving

   ☐ Motor sport or boat racing traveling at speeds greater than 100 mph    ☐ Mountain, rock, or ice climbing greater than 5.0 difficulty

   ☐ Cave exploration, rodeo, bungee jumping, or heli-skiing    ☑ None of the above

3. In the next 12 months, do you intend to live or travel outside the U.S. or Canada?    ☐ Yes    ☑ No

   If Yes, do you plan to travel to Iraq or Afghanistan within the next 2 years, other than on a vacation of less than 2 weeks?    ☐ Yes    ☐ No

4. Have you ever (select all that apply):

   ☐ Pleaded guilty to or been convicted of a felony    ☐ Pleaded guilty to or been convicted of a misdemeanor

   ☐ Been charged with results still pending for any criminal activity or a DUI/DWI    ☐ Been put on probation or in a parole program    ☑ None of the above

**PERSONAL INFORMATION - Continued**

5.  In the past 5 years, have you pleaded guilty to or been convicted of any of the following driving violations?

☐ Operating a vehicle while under the influence of drugs or alcohol

☐ Reckless driving

☐ Driving while license suspended

☑ None of the above

6.  Have you filed for bankruptcy in the past 5 years?  ☐ Yes  ☑ No

7.  Have you ever been declined, postponed, or offered a substandard rating for life or health insurance, or been denied a reinstatement, reissue, or renewal?  ☐ Yes  ☑ No

**MEDICAL INFORMATION**

1.  What is your current height?  

| HEIGHT (feet) | HEIGHT (inches) |
| --- | --- |
| 5 | 7 |

2.  What is your current weight?  

| WEIGHT (lbs.) |
| --- |
| 230 |

3.  Has your weight changed by more than 10 pounds in the last year?  ☐ Yes  ☑ No

4.  In the last 10 years, have you been diagnosed or treated by a medical professional for any of the following:

☐ Diabetes, elevated blood sugar, thyroid, or other endocrine disorder

☐ High blood pressure or high cholesterol

☐ Coronary artery disease, heart attack, or other heart disorder

☐ Asthma, COPD, sleep apnea, or other lung or respiratory disorder

☐ Anxiety, depression, bipolar disorder, or other mental illness

☐ Cancer, tumor, polyp, or cyst

☐ Multiple Sclerosis (MS), alzheimer's, dementia, stroke or Transient Ischemic Attack (TIA), or other brain or nervous system disorder

☐ Colitis or Crohn's Disease, pancreatitis or other disorder of the stomach, liver or digestive system

☐ Kidney, bladder, or prostate disorder

☐ Anemia, leukemia, lupus, auto-immune disease, or blood disorder

☐ Chronic pain, skin, muscle, joint or bone disorder

☐ Reproductive organ or breast disorder

☑ None of the above

**MEDICAL INFORMATION (Continued)**

5. Have you been treated, examined, or advised by a member of the medical profession in the last 3 years for anything that has not already been disclosed (examples include illness, routine check-ups, surgery, or hospitalization)?

   **Reason for Visit(s) - Select all that apply:**

   ☐ Routine Physical or Check Up   ☐ Surgery   ☐ Follow-Up Visit   ☐ Work/Executive Physical

   ☐ Medical Testing   ☐ Hospitalization   ☐ COVID-19 test   ☐ Other

   **REASON FOR OTHER VISIT**
   _____

6. Have you been advised by a medical professional within the past 5 years to seek medical care, testing or treatment that you did not complete?   ☐ Yes   ☑ No

7. Do you have a regular physician?   ☑ Yes   ☐ No

   **PHYSICIAN'S NAME**
   Vivian Bartlett

   | ADDRESS | CITY | STATE | ZIP |
   |---|---|---|---|
   | | Orlando | FL | |

8. Has a biological parent or sibling been diagnosed or treated by a medical professional for cancer or heart disease prior to the age of 60?   ☐ Yes   ☑ No

9. Has a biological parent or sibling been diagnosed or treated by a medical professional for Huntington's disease or Lynch syndrome?   ☐ Yes   ☑ No

10. Have you been counseled or treated by a medical professional for alcohol abuse in the last 10 years?   ☐ Yes   ☑ No

11. Have you used cocaine, heroin, narcotics, hallucinogens, or other controlled substances (other than as prescribed by a medical professional) in the last 10 years?   ☐ Yes   ☑ No

12. When was the last time you used marijuana, cannabis, or THC?

    ☐ Within the last 12 months   ☐ 1-3 years ago   ☐ 3-5 years ago   ☐ 5 or more years ago   ☑ Never

13. Have you ever tested positive for exposure to the HIV infection or has a medical professional ever diagnosed as having ARC or AIDS caused by the HIV infection or other sickness or condition derived from such infection?   ☐ Yes   ☑ No

14. Have you used tobacco or nicotine products in the last 5 years?   ☐ Yes   ☑ No

    If Yes, when was the last time you used tobacco or nicotine?

    ☐ Less than a year ago   ☐ 1-2 years ago   ☐ 2-3 years ago   ☐ 3-5 years ago

    Select all types used in the last 5 years:

    ☐ Cigarettes   ☐ Electronic cigarettes or vaping   ☐ Cigars   ☐ Pipes, hookah/water pipes

    ☐ Chew, snuff or dip   ☐ Nicotine patch or gum   ☐ Other

    **OTHER PRODUCT**
    _____

## AGREEMENTS, DISCLOSURE, AUTHORIZATION AND SIGNATURE

AGREEMENT AND ACKNOWLEDGEMENT: I understand and agree that:

A. Based upon the manner in which this Application for Individual Life Insurance and all supplements was taken, I have either read each section of it or had each section read to me. I have been given the opportunity to have any section repeated or any corrections made, if necessary;

B. I have carefully reviewed all statements and answers in this Application for Individual Life Insurance and all supplements, amendments, and overflow pages and represent they are true and complete to the best of my knowledge and belief;

C. This Application for Individual Life Insurance and all supplements will be attached to and made part of any policy issued; and

D. No insurance will take effect before: (1) this Application for Individual Life Insurance is approved, and (2) the policy is delivered and the first premium is paid while the person to be insured is alive and then only if the health of the insured and other conditions affecting insurability remain as described in the Application for Individual Life Insurance.

*WARNING: Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.*

A faxed or electronically transmitted signed document, including by voice signature delivered to the company, has the same legal force and effect as the original signed document, and once received, is the controlling record.

Signed at ___Orlando_____FL_____
                                              CITY/STATE

Print Name ___Michael Raneri_____
                    PROPOSED APPLICANT/INSURED/OWNER

Sign Here _*Michael Raneri*_____     Date ___11/07/2023_____
              SIGNATURE OF PROPOSED APPLICANT/INSURED/OWNER

## LICENSED REPRESENTATIVE / AGENT INFORMATION AND SIGNATURE (Required)

Does the applicant (proposed owner) have any existing life insurance policies or annuity contracts in force with any insurer?                                                     ☐ Yes    ☐ No

Is the purchase of this life insurance intended to replace any existing annuity contract or life insurance policy, including taking a loan from an existing insurance policy or surrendering, partially surrendering, modifying, amending or otherwise terminating any existing life insurance policy or annuity contract as a result of this application?                                          ☐ Yes    ☐ No

| NAME OF LICENSED REPRESENTATIVE/AGENT | REPRESENTATIVE/AGENT LICENSE # |
|---|---|
| Adam Erlebacher | W336321 |

By the signature below, I certify that:
I have asked and recorded completely and accurately the answers to all questions on this Application - Part 2.
I know of nothing affecting the risk that has not been recorded herein.
Prior to signing this application, only Company-approved sales material was used, and I delivered to the applicant copies of all sales material, any proposal, outline of coverage, buyer's guide, comparison, and/or disclosure statement required by federal or state law to be delivered at the time of application.

Sign Here _*Adam Erlebacher*_____     Date ___11/07/2023_____
              SIGNATURE OF LICENSED REPRESENTATIVE/AGENT

 **Western & Southern Life**
A member of Western & Southern Financial Group

400 Broadway
Cincinnati, OH  45202-3341

## OVERFLOW PAGE

The following information is made part of the Application question indicated.

Proposed Insured Information

Question: Preferred name
Answer: Preferred name: Mike

Question: Gender identity
Answer: Gender identity: man

Question: Do you want to name someone else we can contact about any potential lapse in your policy?
Answer: I want to name someone else you can contact about any potential lapse in my policy.

Question: First name
Answer: Secondary addressee first name: April

Question: Last name
Answer: Secondary addressee last name: Raneri

Question: Email
Answer: Secondary addressee email: april.raneri@gmail.com

This Overflow Page has been read and all answers are intended to be part of the Application for Individual Life Insurance attached to the policy. Warning:  Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

*Michael Raneri*
Name of Insured / Policy Owner

**11/07/2023**
Date of Signature

CF-21-32031-2205 FL

 Western & Southern Life

A member of Western & Southern Financial Group

400 Broadway
Cincinnati, OH 45202-3341

## OVERFLOW PAGE

The following information is made part of the Application question indicated.

Question: Are you currently employed?
Answer: I am currently employed.

## Part 1B - Activities

Question: Have you used tobacco or nicotine products in the last 5 years?
Answer: I have not used tobacco or nicotine products in the last 5 years.

## Part 2B - Medical

Question: Have you been counseled or treated by a medical professional for alcohol abuse in the last 10 years?
Answer: I have not been counseled nor treated by a medical professional for alcohol abuse in the last 10 years.

Question: Do you have a regular physician?
Answer: I have a regular physician.

Question: What is the physician's name?
Answer: Physician name: Vivian Bartlett

This Overflow Page has been read and all answers are intended to be part of the Application for Individual Life Insurance attached to the policy. Warning: Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

*Michael Daneri*

Name of Insured / Policy Owner

## 11/07/2023

Date of Signature

CF-21-32031-2205 FL



**Western & Southern Life**

A member of Western & Southern Financial Group

400 Broadway
Cincinnati, OH 45202-3341

## OVERFLOW PAGE

The following information is made part of the Application question indicated.

Question: Provider address
Answer: Provider address:

Question: City
Answer: City: Orlando

Question: Has a biological parent or sibling been diagnosed or treated by a medical professional for Huntington's disease or Lynch syndrome?
Answer: No biological parent nor sibling has been diagnosed or treated by a medical professional for Huntington's disease or Lynch syndrome.

Other

Question: Legal first name
Answer: First name: April

Question: Legal last name
Answer: Last name: Raneri

Question: Date of birth
Answer: Beneficiary date of birth: ▮▮▮▮▮▮

This Overflow Page has been read and all answers are intended to be part of the Application for Individual Life Insurance attached to the policy. Warning: Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.

*Michael Raneri*

Name of Insured / Policy Owner

11/07/2023

Date of Signature

CF-21-32031-2205 FL

## Table of Contents

POLICY SCHEDULE ................................................................................................................................ 17

DEFINITIONS .......................................................................................................................................... 20

PREMIUM PAYMENTS FOR YOUR POLICY................................................................................................ 21

BENEFITS PROVIDED BY YOUR POLICY.................................................................................................... 22

OWNERS AND BENEFICIARIES OF YOUR POLICY ..................................................................................... 23

OTHER THINGS TO KNOW ABOUT YOUR POLICY ..................................................................................... 24

## Policy Schedule

This page shows specific information about this policy and is referred to throughout the policy.

| | |
|---|---|
| **Policy Number** | J100011769 |
| **Name of Insured** | Michael Raneri |
| **Name of Owner** | Michael Raneri |
| **Gender and Issue Age** | M                    41 |
| **Death Benefit** | 350000 |
| **Type of Policy** | Level Term Insurance |
| **Initial Term Period** | 15 |
| **Insurance Service Center** | Fabric Technologies Inc. |
| **Policy Start Date** | 11/07/2023 |
| **Premium Class** | standard |
| **Policy End Date** | 11/07/2067 |
| **Reinstatement Premium Interest Rate** | 6% |

**STATE INSURANCE DEPARTMENT CONTACT:** If You have a complaint or inquiry regarding this policy, please contact the  FL    Department of Financial Services Division of Consumer Services at  850-413-3089

### Schedule of Premiums

| Description of Benefits | MONTHLY |
|---|---|
| Term Life Insurance | $58.09 |
| Other Riders and Benefits | $ 0.00 |
| TOTAL PREMIUM | $58.09 |

Annual Policy Fee (included in premium above): $75.00

This policy provides term insurance to the policy anniversary nearest age 85. The premiums above are level and guaranteed for  15   years. Premiums will increase annually thereafter as shown in the Schedule of Guaranteed Maximum Renewal Premiums.

## Schedule of Guaranteed Maximum Renewal Premiums

The following premiums are the maximum premiums that apply after the Initial Term Period for the base policy, including the Policy Fee but not including any supplementary benefits that You elect. We refer to any policy year after the Initial Term Period as a Renewal Policy Year. We reserve the right to reduce the premiums payable from the Guaranteed Maximum Renewal Premiums shown below for any Renewal Policy Year. Before each Renewal Policy Year begins, written notice of the premium for that year will be given at least 30 days before the policy anniversary. Any change to the premium charged will be on a uniform basis for all insureds of the same policy age, sex, and premium class whose policies have been in force the same length of time. The Company may change the premium charged to reflect changes in future anticipated or emerging experience based on one or more "experience factors" that are variable in nature and impact the profitability of the policy. "Experience factors" may include, but are not limited to, investment earnings, mortality, persistency, taxes, or expenses. A change in premium will not occur due to deterioration in the Insured's health or change in occupation. In no case will the premium charged ever exceed the Guaranteed Maximum Renewal Premiums shown below.

| | Guaranteed Maximum Renewal Premiums | | | |
|---|---|---|---|---|
| Renewal Policy Year | Monthly | | | |
| 16 | $600.60 | | | |
| 17 | $663.33 | | | |
| 18 | $733.98 | | | |
| 19 | $813.45 | | | |
| 20 | $902.97 | | | |
| 21 | $997.06 | | | |
| 22 | $1,098.77 | | | |
| 23 | $1,209.00 | | | |
| 24 | $1,329.88 | | | |
| 25 | $1,461.73 | | | |
| 26 | $1,704.11 | | | |
| 27 | $1,874.63 | | | |
| 28 | $2,062.51 | | | |
| 29 | $2,268.05 | | | |
| 30 | $2,491.55 | | | |
| 31 | $2,730.58 | | | |
| 32 | $2,988.49 | | | |
| 33 | $3,269.24 | | | |
| 34 | $3,578.31 | | | |
| 35 | $3,920.26 | | | |
| 36 | $4,477.80 | | | |
| 37 | $4,910.19 | | | |
| 38 | $5,382.17 | | | |
| 39 | $5,893.12 | | | |
| 40 | $6,824.28 | | | |
| 41 | $7,432.37 | | | |
| 42 | $7,903.43 | | | |
| 43 | $8,418.64 | | | |
| 44 | $8,956.39 | | | |
| | | | | |

## Accelerated Death Benefit Rider Schedule Page

This page shows specific information about this rider.

**Maximum Eligible Death Benefit:** the lesser of:
1) 90% of the policy's Death Benefit; or
2) $250,000

**Administration Fee:** $100

**Accelerated Benefit Interest Rate:** the greater of:
1) The yield on 90-day treasury bills as of the date of application for an accelerated payment;
2) The Monthly Average of the Composite Yield of Seasoned Corporate Bonds as published by Moody's Investor's Services, Inc. (or any successor to that service) for the calendar month ending two months before the date of application for an accelerated payment; or
3) 4.75%

2205-2623 WSA FL SP

1

## Definitions

Words capitalized in this policy are defined either below or elsewhere in this policy or are an item on the Policy Schedule.

**Issue Age** means a person's age as of their nearest birthday to the Policy Start Date.

**Death Benefit** means the amount We will pay Your beneficiary or beneficiaries in the event of a claim, which is shown on the Policy Schedule.

**Insured** means the person whose life is covered under Your policy, which is shown on the Policy Schedule.

**In Force** means Your policy is active. Your policy is not In Force until You receive it and pay the first premium while the Insured is alive and in the same state of health described in the application. The policy will end on the earliest of:

    a) the Insured's death;
    b) the date the grace period expires and the policy lapses;
    c) the date You request that the policy be terminated; or
    d) the Policy End Date.

If Your policy lapses and You subsequently reinstate it, it will be In Force starting on the reinstatement date.

**In Writing** means in a written or other form of communication that is satisfactory to Us and received by US.

**Policy End Date** means the policy anniversary nearest the Insured's 85th birthday, which is shown on the Policy Schedule.

**Policy Start Date** means the date the policy takes effect, which is shown on the Policy Schedule. Policy years, months and anniversaries are all measured from the Policy Start Date.

**Premium Due Date** means the date on which premiums are due based upon the current premium frequency selected.

**You** and **Your** mean the owner of the policy.

**We**, **Us** and **Our** refer to Western-Southern Life Assurance Company.

## Premium Payments for Your Policy

### Paying Premiums for Your Policy

The first premium is due as of the Policy Start Date. Your policy will not be In Force until the first premium is paid. Premiums for the policy and for any applicable riders are shown on the Policy Schedule. No payment is due or payable for any period after the death of the Insured.

Payment of premiums can be made at any premium frequency We make available and by any payment method We make available. We may limit or change the available payment frequencies or methods from time to time in Our sole discretion. A change in premium frequency or payment method will be effective on the Premium Due Date following the date We approve Your request to change the frequency or method. It is the duty of the owner to promptly notify Us In Writing of any changes to the payment frequency or method. Your premium may vary depending on the approved frequency or payment method You choose.

### Grace Period for Submitting Any Amount Due
There is a grace period of 30 days in which to pay a premium, without interest, after its due date. The insurance remains In Force during the grace period. If the Insured dies during a grace period, We will deduct the unpaid premiums from the policy proceeds.

### Lapse of Policy
Any premium that is not paid by its due date is in default. If it remains unpaid at the end of its grace period, Your policy will lapse as of the due date of the premium in default.

### Reinstating Your Policy After Lapse
If Your policy has lapsed, You may reinstate Your policy prior to the Policy End Date and within three years after the date of lapse. Any riders attached to Your policy can be reinstated if permitted by the terms of the rider or with Our consent.  To reinstate Your policy, You must submit a request In Writing and the following:

1.  Proof of insurability acceptable to Us;

2.  Payment, while the Insured is living, of each unpaid premium, plus interest at the Reinstatement Premium Interest Rate shown on the Policy Schedule, compounded annually.

Proof of insurability may include reinstatement application, medical examination, and laboratory results, attending physician statements, motor vehicle reports and other consumer reports.

The Insured must be alive on the date We approve the reinstatement application or the date We receive the payment needed for reinstatement, whichever comes later. If the Insured is not alive, the request for reinstatement is void.

The reinstated policy will be In Force from the date We approve the reinstatement application or the date We receive the payment needed for reinstatement, whichever comes later. Upon reinstatement, the Suicide and Incontestability provisions of this policy will run anew from the reinstatement date.

## Benefits Provided by Your Policy

The Death Benefit is paid upon death of the Insured while the policy is In Force. It will be paid as a lump sum amount as shown on the Policy Schedule.

**When We Pay Death Benefit Proceeds.** We will pay the Death Benefit proceeds to Your beneficiaries after We have received due proof of the death of the Insured and all information and documents requested by Us. Due proof of death means evidence of death, including, a certified death certificate issued by the governmental authority where the death occurred, or other evidence satisfactory to Us.

**How Death Benefit Proceeds are Calculated.** We calculate the amount of the Death Benefit proceeds as of the date the Insured dies. The benefit payment will be calculated as follows:
- The amount of insurance payable under this policy; plus any benefit payable under an in force rider; plus
- Any portion of a paid premium which applies to a period beyond the policy month of the Insured's date of death; minus
- Any premium due up to the date of death.

**Interest.**
We will pay interest on the death benefit from the date We receive written due proof of death of the Insured to the date of payment of the claim. The rate will be at an annual rate equal to or greater than the Moody's Monthly Average Composite Yield on Seasoned Corporate Bonds, as published by Moody's Investors Services, Inc., or such other rate required by Florida law, as of the date We received proof of death. If payment is to be made under a payment plan, "date of payment" will be the effective date of the payment plan.

We will pay additional interest at a rate of 10% annually beginning with the date that is 31 calendar days from the latest of Our receipt of the items below, to the date of payment:
- a. the date We receive due proof of the Insured's death;
- b. the date We receive sufficient information to determine Our liability, the extent of the liability, and the appropriate payee legally entitled to the proceeds; and
- c. the date that legal impediments to payment of proceeds that depend on the action of parties other than Us are resolved and sufficient evidence of the same is provided to Us. Legal impediments to payment include, but are not limited to (a) the establishment of guardianships and conservatorships; (b) the appointment and qualification of trustees, executors and administrators; and (c) the submission of information required to satisfy state and federal reporting requirements.

## Owners and Beneficiaries of Your Policy

**Owner of Your Policy.** On the Policy Start Date, the Insured is the owner of this policy. After the Policy Start Date but before the death of the Insured, You can change the owner to another person or entity. A change of owner will void any prior beneficiary designation; however, an irrevocable beneficiary cannot be changed without that beneficiary's consent.

If there is more than one owner, all owners must exercise the rights of ownership by joint action. At the death of an owner who is a natural person, his or her estate will be the owner, unless a successor owner has been named In Writing by You. The successor owner would become the new owner upon the death of the owner while the Insured is living. The rights of the owner will end at the death of the Insured, except as provided in the "Beneficiary of Your Policy" provision below.

**Beneficiary of Your Policy.** The beneficiary is the person or persons You named in Your application, or In Writing after that, who will receive the Death Benefit proceeds when the Insured dies.

Your beneficiary can be any person or entity. The initial beneficiary or beneficiaries must be named in the application for this policy. Beneficiaries can be named in two classes – primary or contingent. Co-beneficiaries will receive equal shares unless otherwise stated.

After the Policy Start Date but before the death of the Insured, You can change a beneficiary; however, an irrevocable beneficiary cannot be changed without the irrevocable beneficiary's consent. A beneficiary has no interest in Your policy until the death of the Insured. A person must survive the Insured by seven days to qualify as a beneficiary. If no beneficiary is named or no beneficiary survives the Insured by seven days, the proceeds will be paid to the owner, if living, as a lump sum. If there is no qualifying surviving beneficiary, and the owner is deceased, payment will be made to his or her estate. Any payment We make will fully discharge Our obligation with respect to such payment.

**Procedure for Changing the Beneficiary or Owner.** You must make a request In Writing during the Insured's lifetime if You want to change the beneficiary, owner, or successor owner. Unless otherwise specified by You, the change will take effect as of the date You signed the request, whether or not the Insured is living when We receive Your request. The change will be subject to any legal restrictions. It will also be subject to any payment We made or any action We took before We received the change.

**Assignments.** If You make an absolute assignment of Your policy, the assignee will be the new owner. If You make a collateral assignment of Your policy, there is no change of owner or beneficiary. However, the rights of the owner and beneficiary will be subject to the terms of the collateral assignment. Assignments, unless otherwise specified by You, will take effect on the date the notice of assignment is signed by You, subject to all payments made and actions taken by Us before a signed copy of Your assignment is received by Us. We will not be responsible for determiningwhether an assignment is valid.

## Other Things to Know About Your Policy

**Misstatement of Age or Gender.** If We determine that there was a misstatement of age or gender of the Insured on Your application, the values and benefits will be the amounts that the premiums paid would have purchased based upon the correct age and gender. If You have any riders on Your policy, the benefit for them will be the amount that You could have bought with Your premium based upon the correct age and gender.

**Incontestability.** We cannot contest coverage after the policy has been In Force during the lifetime of the Insured for two years from the Policy Start Date and, with respect to any coverage that has been reinstated, for two years from the date of reinstatement except for failure to pay premiums.

**Suicide.** In the event of the suicide of the Insured, while sane or insane, within two years from the Policy Start Date or the date of any reinstatement, Our liability will be limited to the amount of premiums paid.

**Dividends**. This policy is a non-participating policy and does not pay dividends.

**Protection from Creditors.** All payments under the policy are exempt from legal process and the claims of creditors to the extent permitted by law.

**Making Changes to Your Policy.** You may request In Writing that We decrease the Death Benefit at any time while Your policy is In Force. No increase of the Death Benefit is allowed. Any decrease will become effective on the date We approve Your request, and premiums due after that will reflect the lower Death Benefit. You cannot reduce the Death Benefit below the amount of coverage We would issue under a new policy. The Insured must be living on the date We receive Your request. An amendment will be added to policy reflecting the new Death Benefit and premium. We reserve the right to make changes to Your policy if necessary to comply with applicable tax law.

**Entire Contract.** The entire contract consists of this policy, any attached riders, endorsements, amendments, the original application and any supplemental or subsequent application(s) for changes that are attached to this policy.

We have relied upon the application(s) in issuing this policy. All statements made in the application(s) are assumed to be true to the best of the knowledge and belief of the person(s) making them. These statements, in the absence of fraud, are deemed representations and not warranties. No statement will be used to void this contract or contest a claim unless it is a material misrepresentation contained in an application. If any statement in any application(s) is not true or complete, You must tell Us.

Nothing else that has been said or put in writing is part of this contract unless it is attached. Only Our President, Chairman or Secretary may change the terms of this policy or waive any of Our rights or requirements under it, and such change or waiver must be In Writing and signed.

**Governing Law.** Except as otherwise stated herein, this contract shall be governed by the applicable laws of the state in which it was issued, without giving effect to any principle or law that would result in the application of the laws of another state.

## Western-Southern Life Assurance Company

### Accelerated Death Benefit Rider

This rider is a part of the policy to which it is attached. The purpose of this rider is to allow the owner of the policy to receive an accelerated Death Benefit in the event the Insured is diagnosed with a Terminal Illness. The following provisions amend the policy, and the terms used in this rider have the same meanings as those used in the policy unless otherwise defined in this rider.

No additional premium is required for this rider. This rider may be attached to an individual term life insurance policy. No loan provisions and no cash values are permitted on either the base policy or accelerated death benefit rider.

**NOTICE: An accelerated Death Benefit may be taxable. You should consult Your personal tax advisor about the potential impact of any benefit received under this rider.**

**Any benefit received under this rider may adversely impact the recipient's eligibility for Medicaid or other government benefits.**

**Any benefit paid under this rider will reduce the policy's Death Benefit. See the Effect on the Policy provision of this rider for more information.**

### DEFINITIONS

**Accelerated Benefit Amount:** This is the amount of the policy's Death Benefit that You request to be paid on an accelerated basis if the Insured is diagnosed with a Terminal Illness as described in this rider. No single Accelerated Benefit Amount may be less than $1,000 and the cumulative Accelerated Benefit Amount requested may not exceed the Maximum Eligible Death Benefit shown on the Policy Schedule.

**Licensed Health Care Practitioner:** A legally qualified physician, limited to M.D. and D.O., practicing in the United States within the scope and state of his or her licensure. The Licensed Health Care Practitioner may not be You, the Insured, or the spouse, child, parent, sibling or grandparent of You or the Insured.

**Terminally Ill Individual:** An individual who is Terminally Ill.

**Terminal Illness or Terminally Ill:** A medical condition which is reasonably expected to limit the Insured's life expectancy to twelve (12) months or less.

**Written Proof:** Documentation satisfactory to Us that documents that the Insured has been diagnosed as having a Terminal Illness. The Written Proof will include certification by a Licensed Health Care Practitioner.

### ACCELERATED BENEFIT AMOUNT

If the Insured is certified by a Licensed Health Care Practitioner as being a Terminally Ill Individual, You may request an Accelerated Benefit Amount up to the Maximum Eligible Death Benefit shown on the Policy Schedule, but no less than $1,000. The Accelerated Benefit Amount requested will be reduced by the Processing Fee and other deductions described below in the Net Accelerated Benefit Amount provision of this rider and paid as a lump sum.

If You request an Accelerated Benefit Amount that is less than the Maximum Eligible Death Benefit, you may make additional requests until the cumulative Accelerated Benefit Amount is equal to the Maximum Eligible Death Benefit, as long as any Accelerated Benefit Amount you request is at least $1,000. Before approving any additional requests, We may require You to provide Written Proof that the Insured is still a Terminally Ill Individual. The Administration Fee and other deductions described below in the Net Accelerated Benefit Amount provision of this rider apply equally to any additional Accelerated Benefit Amounts.

Benefits under this rider are payable only if the Insured is living and this rider is in force.

## COSTS OF THE ACCELERATED DEATH BENEFIT RIDER

No additional premium is required for this rider. However, upon acceleration, You will not receive the full Accelerated Benefit Amount that You request, but rather a reduced amount as described below in the Net Accelerated Benefit Amount provision.

## NET ACCELERATED BENEFIT AMOUNT

The Net Accelerated Benefit Amount is the amount of the benefit that will be paid to You. It is equal to the Accelerated Benefit Amount requested reduced by:

1) The Administration Fee, as shown on the Policy Schedule;
2) An actuarial discount, as calculated by Us and described below; and
3) Outstanding unpaid premium on the base policy.

The actuarial discount will be determined by calculating the present value of future benefits attributable to the Accelerated Benefit Amount less the present value of future premiums that would be required to keep the Accelerated Benefit Amount in force. These calculations will be performed using a mortality table for terminally ill individuals that We determine and at the Accelerated Benefit Interest Rate described on the Policy Schedule and in effect at the time the benefit is requested.

No later than the time the benefit payment is made, We will provide You with a written notice showing the dollar amount of the payment and the remaining available amount of Death Benefit.

## EFFECT ON THE POLICY

Upon payment of the Net Accelerated Benefit Amount, the policy's Death Benefit will be reduced by the Accelerated Benefit Amount on a dollar for dollar basis. The policy premium shall be reduced to the premium that would apply had the policy been issued at the reduced amount of insurance.

Prior to or concurrent with the election to accelerate the Death Benefit of the policy, the owner and any irrevocable beneficiary will be given a statement demonstrating the effect of the acceleration on the policy's Death Benefit and premium. The statement will show the premium that will be payable to keep the policy in force and will display all charges associated with accelerating the Death Benefit.

If applicable, any Accidental Death Benefit Rider attached to the policy will be unaffected by the payment of an accelerated Death Benefit, provided the policy and the Accidental Death Benefit Rider remain in force.

## CLAIMS

**Notice of Claim.** Written notice of a claim may be given to Us any time after the date the Insured is diagnosed as Terminally Ill. Notice of claim may be sent directly to Us.

**Claim Forms.** Within fifteen days of receiving notice, We will send You claim forms. If the forms are not mailed or given to You within fifteen days, You will meet the claim form requirements by giving Us a Written Proof covering the character and extent of the occurrence for which claim is made.

**Proof of Loss.** Written Proof that the Insured meets the requirements of this rider must be received by Us before We will pay a benefit under this Rider. Proof will include a properly completed claim form and a written statement from a Licensed Health Care Practitioner that the Insured has been diagnosed as a Terminally Ill Individual, as defined in this rider. We may request additional medical information from the Licensed Health Care Practitioner submitting the statement.

Prior to the payment of any benefit under this rider, We must obtain from any assignee or irrevocable beneficiary a signed acknowledgement of consent for payout.

**Time Payment of Claims.** The Net Accelerated Benefit Amount is payable immediately upon receipt of due written Proof of Loss.

**Payment of Claims.** The Net Accelerated Benefit Amount shall be paid to You or Your estate while the Insured is living, unless the benefit has been otherwise assigned or designated by You.
If the Insured dies after a claim has been filed under this rider, but before We pay a benefit, We will pay the policy Death Benefit as if no claim had been filed under this rider.

**Physical Examination.** We may require, at Our expense, an additional examination by a Licensed Health Care Practitioner that We choose. In the case of a conflict between Your Licensed Health Care Practitioner and Our Licensed Health Care Practitioner, eligibility for benefits shall be determined by a third medical opinion, at Our expense, that is provided by a Licensed Health Care Practitioner that is mutually acceptable to You and Us.

## INCONTESTABILITY
The Incontestability provision of the policy applies to this rider.

## REINSTATEMENT
This rider will be reinstated if the policy is reinstated, provided the cumulative Accelerated Benefit Amount is less than the Maximum Eligible Death Benefit.

## TERMINATION
This rider will terminate:
    1. If the policy terminates for any reason; or
    2. Upon Your request In Writing.

Termination shall not prejudice the payment of benefits for any qualifying event that occurred while the rider was in force.

The rider is effective on the Policy Start Date and is subject to all of the provisions, conditions, and limitations of the policy except as otherwise stated in this rider.

Secretary

John H Barrett
Chairman, President and
Chief Executive Officer



**Western & Southern Life**

A member of Western & Southern Financial Group

## Accelerated Death Benefit Rider Disclosure

The Accelerated Death Benefit Rider provides the owner the right to receive an accelerated Death Benefit in the event the Insured is diagnosed with a Terminal Illness.

### Terminal Illness

A Terminal Illness is a medical condition that is reasonably expected to limit the Insured's life expectancy to twelve (12) months or less.  To qualify for benefits under this rider, the Insured must by diagnosed as Terminally Ill by a Licensed Health Care Practitioner as defined in the rider.

### Rider Charges

No additional premium is required for this rider.  However, the Accelerated Benefit Amount will be reduced by an Administration Fee, an actuarial discount, and a pro-rata share of outstanding policy debt (if applicable) prior to payment. This is described in more detail in the rider.

### Impact on Policy Values

When a benefit is paid under this rider, the policy's Death Benefit will be reduced by the Accelerated Benefit Amount on a dollar for dollar basis. Additionally, the policy's cash value, if any, will be reduced by the same proportion as the policy's Death Benefit was reduced. The policy premium shall be reduced to the premium that would apply had the policy been issued at the reduced amount of insurance.

**Accelerated Death Benefits do not and are not intended to qualify as long-term care insurance.**



The receipt of an Accelerated Benefit under this rider may adversely affect the recipient's eligibility for Medicaid or other government benefits or entitlements. Accelerated Benefits paid from this rider are intended to qualify for favorable tax treatment under section 101(g) of the Internal Revenue Code. There are circumstances when receipt of an Accelerated Benefit payment may be taxable. We recommend that you contact a tax advisor before requesting a benefit under this rider.

**Acknowledgement**

I acknowledge that I have received, read and understood the Accelerated Death Benefit Rider Disclosure provided in connection with my application for a life insurance policy with Western-Southern Life Assurance Company.

Print Name    Michael Raneri
                   PROPOSED APPLICANT/INSURED/OWNER

Sign Here    *Michael Raneri*       Date    11/07/2023
         SIGNATURE OF PROPOSED APPLICANT/INSURED/OWNER



## Western & Southern Life

## Statement Of Policy Cost And Benefit Information

THIS IS NOT AN INSURANCE POLICY. FOR FULL INFORMATION READ YOUR POLICY

| | |
|---:|:---|
| **Service Portal** | www.meetfabric.com |
| **Name of Insurer** | Western-Southern Life Assurance Company |
| **Home Office Address of Insurer** | 400 Broadway, Cincinnati, OH  45202 |

| Insured Michael Raneri | Issue Age 41 | Policy Number J100011769 |
|---|---|---|

Your state requires that the following information be provided to assist you in understanding your policy. The essential elements of this contract are set out below. A representative can be reached on our Service Portal.  They will be pleased to answer any questions you may have about your policy.

The Benefits outlined are fully described in the policy. The terms of the policy are controlling on questions concerning benefits. This outline is provided for informational purposes only.

| Basic Plan | 15 | YEAR INDIVIDUAL TERM LIFE POLICY |
|---|---|---|
| Rider(s) | | ACCELERATED DEATH BENEFIT RIDER |

### Premiums and Benefits for Basic Policy
The Policy Contains No Loan Provision.

| Year | Annual Premium | Death Benefit Beginning of Year |
|:---:|:---:|:---:|
| 1 | $697.08 | $350,000.00 |
| 2 | $697.08 | $350,000.00 |
| 3 | $697.08 | $350,000.00 |
| 4 | $697.08 | $350,000.00 |
| 5 | $697.08 | $350,000.00 |
| 10 | $697.08 | $350,000.00 |
| 15 | $697.08 | $350,000.00 |
| 16 | $6,136.68 | $350,000.00 |
| 20 | $9,220.56 | $350,000.00 |
| 44 | $91,687.68 | $350,000.00 |

### Life Insurance Cost Indexes

Index figures are based on the Basic Policy.

| Cost Indexes | 10 Years | 20 Years |
|:---|:---:|:---:|
| Surrender Cost Index | N/A | N/A |
| Net Payment Cost Index | $0.17 | $0.17 |

The above figures assume the rate of standard

**Date Prepared:** 11/07/2023

## Continuation of Statement of Policy Cost and Benefit Information

Insured  Michael Raneri                    Issue Age  41                    Policy Number  J100011769

## Premiums and Benefits for Policy Riders

| Policy Riders | Cost of Rider(s) | Benefit of Rider(s) |
| --- | --- | --- |
| Accelerated Death Benefit Rider | $0.00 | Please refer to your policy |

2205-4004 WSA FL PS

Date Prepared: 11/07/2023



**Western & Southern Life**

A member of Western & Southern Financial Group

**Information about your policy from Western-Southern Life Assurance Company.**

Dear Policy Owner:

Western-Southern Life Assurance Company has arranged for an unaffiliated third party administrator, Fabric by Gerber Life (Fabric), to service policy/contracts on our behalf, including handling administrative functions such as premium collection, payment of claims, and service related requests.

**What you need to know:** Both Western-Southern Life Assurance Company and Fabric are committed to providing you with exceptional service. Your coverage will be administered in accordance with Western-Southern Life Assurance Company policies and procedures. This arrangement in no way affects your status as a valued customer of Western-Southern Life Assurance Company.

**What you need to do:** Please keep this notice for your records.

Remember, you can access your policy information 24-7 through the **Client Self-Service Portal** at www.meetfabric.com. Login anytime to review your policy details, make updates, or download copies of your documents.

Thanks for choosing Western-Southern Life Assurance Company

Sincerely,
  Western-Southern Life Assurance Company Customer Care Team

TPA-LTR-0820

This page intentionally left blank

—

 **Western & Southern Life**
A member of Western & Southern Financial Group
400 Broadway, Cincinnati, OH 45202-3341, 1-800-926-1315

# Death Benefit Claim – Life

Please print all information in black or blue ink AND return all completed pages.

**CLAIM # (Internal Use Only)**

| POLICY NUMBER | POLICY NUMBER | POLICY NUMBER |
|---|---|---|
| J100011769 | | |

## 1. DECEASED INFORMATION

**NAME (First, Middle, Last)**
MICHAEL RANERI

**ALSO KNOWN AS** (OTHER NAMES: MAIDEN NAME, HYPHENATED NAME, NICKNAME, DERIVATIVE OF FIRST AND/OR MIDDLE NAME, OR AN ALIAS)

**STREET ADDRESS**
10912 High Bush Ct

**CITY**
Orlando

**STATE**
FL

**ZIP**
32825

**DATE OF DEATH** (MM/DD/YYYY)
02/12/2024

**AGE AT DEATH**
41

**MARITAL STATUS**
☒ Married   ☐ Divorced   ☐ Widowed   ☐ Single

**MANNER OF DEATH**   ☒ Natural   ☐ Unknown   ☐ Accident   ☐ Suicide   ☐ Homicide

Did the insured die in a foreign country?   ☐ Yes   ☒ No   If yes, where?

A Foreign Death Questionnaire will be required for a foreign death.

## 2. BENEFICIARY INFORMATION

**NAME (First, Middle, Last) or ENTITY NAME (Full Legal Name)**
April Bailey Raneri

**ALSO KNOWN AS** (OTHER NAMES: MAIDEN NAME, HYPHENATED NAME, NICKNAME, DERIVATIVE OF FIRST AND/OR MIDDLE NAME, OR AN ALIAS)

**RELATIONSHIP TO DECEASED**
Spouse

**STREET ADDRESS (No PO Box)**
10912 High Bush Ct.

**CITY**
Orlando

**STATE**
FL

**ZIP**
32825

**MAILING ADDRESS (if different from above)**

**CITY**

**STATE**

**ZIP**

**DATE OF BIRTH** (MM/DD/YYYY)

**AGE***
40

**SOCIAL SECURITY/TAX IDENTIFICATION NUMBER**

**TELEPHONE NUMBER** (include area code)

**EMAIL (Beneficiary)**

* IF THE BENEFICIARY IS A MINOR, SUBMIT A COPY OF CURRENT LETTERS OF CONSERVATORSHIP OR GUARDIANSHIP OF THE ESTATE OF THE MINOR.

As used herein, "Western & Southern Life" shall refer to both The Western and Southern Life Insurance Company and its wholly owned subsidiary, Western-Southern Life Assurance Company.

DO-1592-L-2311

Page 1 of 6
Please Return This Form



**EXHIBIT B**

| NAME OF DECEASED | | CLAIM # (Internal Use Only) |
|---|---|---|
| MICHAEL RANERI | | |

| POLICY NUMBER | POLICY NUMBER | POLICY NUMBER |
|---|---|---|
| J100011769 | | |
| | | |

## 2. BENEFICIARY INFORMATION (Continued)

Will the policy proceeds be assigned to a funeral home, mortuary, chapel or cemetery?     ☐ Yes   ☒ No

If yes, please list the policies assigned, company name and the amount assigned in the Additional Remarks section. If no, or UNCHECKED, we will proceed with the claim as NO ASSIGNMENT.

## 3. ADDITIONAL REMARKS

N/A

## 4. PAYMENT ELECTION  (Please choose *ONLY* one of the following options and complete the designated section)

An important function of Western & Southern Life Insurance Company (Western & Southern Life) is not only providing proceeds at the death of an insured, but also providing various options under which the proceeds may be distributed.  The beneficiary may elect from the following options:

☒ **Lump Sum Payment as a Check** (Must complete sections 1-6) – A single, one-time check for the entire policy proceeds will be delivered to your address on record with Western & Southern Life.

☐ **Lump Sum Payment to W&S Life Account** - This option is available for amounts totaling $10,000 or higher per beneficiary. (Must complete sections 1-8)

Entire contract proceeds, which you are entitled, will be transferred to a W&S Life Account in your name. W&S Life Accounts reside with Western & Southern Life but are administered by The Northern Trust Company. Your account balance would earn interest at a rate of 0.10%.* Please see the W&S Life Account informational brochure for important information about this option. The W&S Life Account option is not available to beneficiaries who reside in any state or jurisdiction which does not permit settlement under the W&S Life Account. Upon election of this settlement option, all other settlement options under your contract will not be preserved (unless otherwise required by law). **Your account balances are not FDIC insured, but may be within coverage provided under your State Guaranty Association. State Guaranty Association coverage and limits on coverage vary. Please contact the National Organization of Life and Health Insurance Guaranty Association (www.nolhga.com) or contact your State Guaranty Association to learn more. Kansas residents please see the attached disclaimer regarding the state guaranty association. For beneficiaries in the state of Louisiana, the contact information is 1702 N 3rd St, Baton Rouge, LA 70802, telephone number (225) 342-5900.**

☐ I would like to elect one of the settlement options below.  Policy proceeds will be held by Western & Southern Life on your behalf and will earn interest**.

☐ **Interest Income (Interest Payments)** (Must complete sections 1-6 and 8)
Interest earned will be paid in regular intervals - monthly, quarterly, semi-annual or annual.  Also, the proceeds are available for full or partial withdrawals or can be applied to another option, at any time.

**PAYMENT INTERVALS**
☐ Monthly   ☐ Quarterly   ☐ Semi-Annual   ☐ Annual

### Elections continued on next page.

*The interest earned each year will be reported to the Internal Revenue Service.  Northern Trust will provide you with a 1099 form at the beginning of each year. Interest rate is current as of the printing of this form.  Interest rate is subject to change.  If you have questions regarding your Western & Southern Life Account, please call 1-800-343-2551.

** The interest rates for settlement options are listed in the policy.  If you need additional information concerning the interest rate, please let us know.

Please Return This Form



| NAME OF DECEASED | | CLAIM # (Internal Use Only) |
|---|---|---|
| MICHAEL RANERI | | |

| POLICY NUMBER | POLICY NUMBER | POLICY NUMBER |
|---|---|---|
| J100011769 | | |
| | | |

## 4. PAYMENT ELECTION  Continued

☐ **Interest Accumulation** (Must complete sections 1-6 and 8)  Policy proceeds will be held by Western & Southern Life on your behalf and will earn interest. Interest earned will be added to total policy proceeds and continue to earn interest. At any time, the proceeds would be available for full or partial withdrawals or applied to another option.

☐ **Installment Income (Fixed Period/Fixed Amount)** (Must complete sections 1-6 and 8)  Payments will be made in installments as specified by you (monthly, quarterly, semi-annual, annual) for a specific number of years (5-30) or for a specific amount.  Once this option is established, it cannot be changed. The unpaid portion of proceeds will earn interest. All periods may not be available depending on your age, tax status and any guarantees in the policy.

    ☐ **Fixed Period:** An income desired for _____ years.

       ☐ Monthly    ☐ Quarterly    ☐ Semi-Annual    ☐ Annual

    **OR**

    ☐ **Fixed Amount:** Amount of income desired $_____.

       ☐ Monthly    ☐ Quarterly    ☐ Semi-Annual    ☐ Annual

☐ **Life Income With a Period Certain** (Must complete sections 1-6 and 8)  The proceeds and interest are used to provide an income for your lifetime. A period certain can be elected, and if you should die within the period certain, the remainder of the proceeds would be payable to whomever you designate as beneficiary. Period certains are 10, 15 and 20 years. Once this option is established, your payment option cannot be changed for the balance of the period certain. Unpaid portions of the proceeds will earn interest.

    A monthly life income with ☐ 10 years certain    ☐ 15 years certain    ☐ 20 years certain

☐ **Life Income No Refund - paid monthly** (Must complete sections 1-6)  The proceeds and interest are used to provide an income for your lifetime with payments stopping at your death. No payments are due after your death and Western & Southern Life has no further obligation to your estate or any other person. Once this option is established, your payment option cannot be changed. The taxable amount will be based on the proceeds applied to this option and your life expectancy.

The policy on the insured may include additional options not listed on this form. If you want to inquire whether additional options exist, please contact us by calling 1-800-926-1315.

If the Owner chooses one of the settlement options listed above prior to the death of the Insured, you may not select a different option. Your choice of settlement options may be affected by the amount payable. Minimum amounts are required for some settlement options. See settlement options in the policy for further information. If you have any questions regarding the W&S Life Account or other settlement options, including the current interest rates, you may call 1-800-926-1315.

**Please Note:**
   (a) In the event you fail to expressly elect any option above, you shall receive payment by way of a lump sum payment as a check.
   (b) Your election regarding the payment of policy proceeds may have various tax implications and you may wish to consult an attorney or tax advisor regarding your elections.
   (c) If you elect a settlement option other than a lump sum payment, you may need to complete additional forms which will be provided to you promptly upon our receipt of this form.



Case 6:25-cv-00198-CEM-RMN    Document 1-1    Filed 02/05/25    Page 47 of 58 PageID 52

| NAME OF DECEASED | | CLAIM # (Internal Use Only) |
|---|---|---|
| MICHAEL RANERI | | |

| POLICY NUMBER | POLICY NUMBER | POLICY NUMBER |
|---|---|---|
| J100011769 | | |
| | | |

## 5. PRIVACY PRACTICES

Western & Southern will collect information you have entered on this form. We will use this information to help us offer you products or services to help meet your needs, and for other legally permissible purposes. Please visit our Privacy Policy Statement for more information about our information practices including information about your choices: http://www.westernsouthern.com/privacy-policy.

## 6. CERTIFICATION

The undersigned certifies that (a) the information provided, including any documents submitted in support of the claim, is true, correct and complete; (b) he, she or it (in the case of an entity) is named as a beneficiary under the policies specified above; (c) if applicable, he, she or it is the duly appointed and acting personal representative of the estate to which the policy proceeds are payable; (d) if applicable, he, she or they are fully authorized to sign on behalf of the legal entity named as beneficiary; (e) the right to the receipt of the proceeds has not been assigned to any third party and, if the undersigned beneficiary is an individual, he or she has not filed for bankruptcy nor are their rights as beneficiary subject to any pending proceeding (including a divorce or bankruptcy) or court order.

The undersigned acknowledges that he or she has received and read the attached **Fraud Warning Disclosures, Privacy Policy Statement** and any other attachments.

The Internal Revenue Service requires us to request your Social Security number and Backup Withholding information. We (and other firms that pay interest) may have to withhold, and send to the IRS on your behalf, 24% of any interest you may be entitled to, unless we have your correct Social Security number, and you state that you have not been notified that you are subject to an IRS Backup Withholding Order on interest and dividends.

### Certification

Under penalties of perjury, I certify that:

(1)  The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

(2)  I am not subject to backup withholding because: (a) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest and dividends, or (b) the IRS has notified me that I am no longer subject to backup withholding; and

(3)  I am a U.S. Citizen or other U.S. person (namely, an individual who is a U.S. Citizen or U.S. resident alien or a partnership, corporation, company or association created or organized in the United States or under the laws of the United States, an estate (other than a foreign estate) or a domestic trust); and

(4)  The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA report is correct.

**Certification Instructions** – You must cross out item (2) above if you have been notified by the IRS that you are currently subject to backup withholding because of underreporting interest or dividends on your tax return.

A signature on this document transmitted via facsimile or electronically shall have the same force and effect as an original signature. This document, if transmitted to us electronically or via facsimile, shall have the same force and effect as the original document and, when received by us, shall be the controlling record.

Print Name  April Bailey Ranert  Date 3/18/2024  Sign Here  April Benir Rui
BENEFICIARY (if legal entity, see below)                                    SIGNATURE OF BENEFICIARY

If legal entity, please complete the following:

FULL ENTITY NAME _____

☐ Estate    ☐ Trust    ☐ Corporation    ☐ Partnership    ☐ Limited Liability Partnership (LLP)    ☐ Limited Liability Company (LLC)

Print Name _____    Date _____    Sign Here _____
(if Entity, include title)

Print Name _____    Date _____    Sign Here _____
(if Entity, include title)

Representatives of legal entities must provide appropriate documentation of authority to sign on behalf of the entity.

DO-1592-L-2311

Please Return This Form



**NAME OF DECEASED**
MICHAEL RANERI

**CLAIM # (Internal Use Only)**

| **POLICY NUMBER** | **POLICY NUMBER** | **POLICY NUMBER** |
|---|---|---|
| J100011769 | | |
| | | |

## 7. LIFE ACCOUNT INFORMATION AND AUTHORIZATION (926)

**This section is only required to be completed if the beneficiary has elected to receive payment via a W&S Life Account.**

**NAME (First, Middle, Last)**

**TELEPHONE NUMBER** (Include area code)

**STREET ADDRESS (No PO Box)**        **CITY**        **STATE**    **ZIP**

**MAILING ADDRESS (If different from above)**    **CITY**        **STATE**    **ZIP**

**DATE OF BIRTH** (MM/DD/YYYY)        **SOCIAL SECURITY/TAX IDENTIFICATION NUMBER**

**Authorization & Acknowledgment:**

I have reviewed and fully understand the payment options to which I am entitled as a beneficiary under the policies listed above.

I hereby **authorize Western & Southern Life to establish a W&S Life Account in my name.** I understand that this form serves as a signature card when drafts written on my W&S Life Account are processed.

I understand my W&S Life Account will be an interest-bearing account and that the **rate of such interest is subject to change.**

I acknowledge that my account will be administered by The Northern Trust Company on behalf of Western & Southern Life.

I understand that I have the right to designate a beneficiary for the W&S Life Account. If I choose not to designate a beneficiary, the balance of the account will be payable to my estate upon my death.

I acknowledge that upon receipt of my W&S Life Account draft book, I will have the right to withdraw all or a portion of the funds in my account at any time (minimum draft amount of $250 applies).

I acknowledge that **I have received the W&S Life Account Informational Brochure** detailing the terms and conditions of the W&S Life Account and by signing below, **I agree to all such terms and conditions.**

I understand that **my W&S Life Account balance will not be insured by the Federal Deposit Insurance Corporation (FDIC).** I acknowledge that my W&S Life Account **will** be guaranteed by Western & Southern Life.

I authorize Western & Southern Life, or its authorized representatives to use or disclose my personal information as stated in its Privacy Policy Statement, including, but not limited to, the following: (1) administer claims, and (2) conduct other legally permissible activities. See link to Privacy Policy Statement in Privacy Practices Section.

Print Name _____    Date _____    Sign Here _____
                ACCOUNT OWNER                                                SIGNATURE OF ACCOUNT OWNER

### Important Information about the
### USA PATRIOT ACT

To help fight the funding of terrorism and money-laundering activities, the U.S. government has passed the USA PATRIOT ACT, which requires banks, including our processing agent, The Northern Trust Company, to obtain, verify and record information that identifies persons who engage in certain transactions with or through a bank.

This means that we will need to verify the name, residential or street address (no P.O. Boxes), date of birth and social security number or other tax identification number of all account owners.



**NAME OF DECEASED**

MICHAEL RANERI

**CLAIM # (Internal Use Only)**

**POLICY NUMBER**

J100011769

**POLICY NUMBER**

**POLICY NUMBER**

## 8. NEW BENEFICIARY DESIGNATION

**NAME (First, Middle, Last)**

**DATE OF BIRTH (MM/DD/YYYY)**    **SOCIAL SECURITY/TAX IDENTIFICATION NUMBER**    **RELATIONSHIP TO YOU**

**TELEPHONE NUMBER** (Include area code)    **EMAIL**

**ADDRESS**    **CITY**    **STATE**    **ZIP**

**BENEFICIARY TYPE**    **PERCENTAGE**
☐ Primary    ☐ Contingent    %

**NAME (First, Middle, Last)**

**DATE OF BIRTH (MM/DD/YYYY)**    **SOCIAL SECURITY/TAX IDENTIFICATION NUMBER**    **RELATIONSHIP TO YOU**

**TELEPHONE NUMBER** (Include area code)    **EMAIL**

**ADDRESS**    **CITY**    **STATE**    **ZIP**

**BENEFICIARY TYPE**    **PERCENTAGE**
☐ Primary    ☐ Contingent    %



# Western & Southern Life

A member of Western & Southern Financial Group

400 Broadway, Cincinnati, OH 45202-3341, 1-800-926-1315

# Death Benefit Claim – Medical History Questionnaire

**CLAIM # (Internal Use Only)**

## DECEASED INFORMATION

**NAME (First, Middle, Last)**
MICHAEL RANERI

| **POLICY / CONTRACT NUMBER** | **POLICY / CONTRACT NUMBER** | **POLICY / CONTRACT NUMBER** |
|---|---|---|
| J100011769 | | |
| | | |

## PHYSICIAN INFORMATION

List all Physicians who have treated deceased.

**FAMILY PHYSICIAN NAME (First, Middle, Last)**   **TELEPHONE NUMBER** (Include area code)
Vivian Bartlett

| **STREET ADDRESS** | **CITY** | **STATE** | **ZIP** |
|---|---|---|---|
| 12780 Waterford Lakes | Orlando | FL | 32828 |

**DATES OF TREATMENT** (MM/DD/YYYY)
Unknown

**DIAGNOSIS OR REASON FOR TREATMENT**
Annual physical

---

**PHYSICIAN NAME (First, Middle, Last)**   **TELEPHONE NUMBER** (include area code)

| **STREET ADDRESS** | **CITY** | **STATE** | **ZIP** |
|---|---|---|---|
| | | | |

**DATES OF TREATMENT** (MM/DD/YYYY)

**DIAGNOSIS OR REASON FOR TREATMENT**

---

The Western and Southern Life Insurance Company
Western-Southern Life Assurance Company

DO-1592-CONT-1908

Page 1 of 4




| NAME OF DECEASED | | CLAIM # (Internal Use Only) |
|---|---|---|
| MICHAEL RANERI | | |

| POLICY / CONTRACT NUMBER | POLICY / CONTRACT NUMBER | POLICY / CONTRACT NUMBER |
|---|---|---|
| J100011769 | | |
| | | |

## PHYSICIAN INFORMATION (continued)

**PHYSICIAN NAME (First, Middle, Last)**

**TELEPHONE NUMBER** (include area code)

**STREET ADDRESS**   **CITY**   **STATE**   **ZIP**

**DATES OF TREATMENT** (MM/DD/YYYY)

**DIAGNOSIS OR REASON FOR TREATMENT**

**PHYSICIAN NAME (First, Middle, Last)**

**TELEPHONE NUMBER** (include area code)

**STREET ADDRESS**   **CITY**   **STATE**   **ZIP**

**DATES OF TREATMENT** (MM/DD/YYYY)

**DIAGNOSIS OR REASON FOR TREATMENT**

**PHYSICIAN NAME (First, Middle, Last)**

**TELEPHONE NUMBER** (include area code)

**STREET ADDRESS**   **CITY**   **STATE**   **ZIP**

**DATES OF TREATMENT** (MM/DD/YYYY)

**DIAGNOSIS OR REASON FOR TREATMENT**



**NAME OF DECEASED**

MICHAEL RANERI

**CLAIM # (Internal Use Only)**

| **POLICY / CONTRACT NUMBER** | **POLICY / CONTRACT NUMBER** | **POLICY / CONTRACT NUMBER** |
|---|---|---|
| J100011769 | | |
| | | |

## MEDICAL FACILITY INFORMATION

List all hospitals or clinics where deceased was treated.

**MEDICAL FACILITY NAME**

Orlando Health South Seminole

**TELEPHONE NUMBER**  (include area code)

**STREET ADDRESS**  
555 W State Rd 434

**CITY**  
Longwood

**STATE**  
FL

**ZIP**  
32750

**DATES OF CONFINEMENT**  (MM/DD/YYYY)  
2/7 - 2/12/2024

**DIAGNOSIS OR REASON FOR TREATMENT**  
Cardiac arrest - etiology unknown

**MEDICAL FACILITY NAME**

**TELEPHONE NUMBER**  (Include area code)

**STREET ADDRESS**

**CITY**

**STATE**

**ZIP**

**DATES OF CONFINEMENT**  (MM/DD/YYYY)

**DIAGNOSIS OR REASON FOR TREATMENT**

**MEDICAL FACILITY NAME**

**TELEPHONE NUMBER**  (include area code)

**STREET ADDRESS**

**CITY**

**STATE**

**ZIP**

**DATES OF CONFINEMENT**  (MM/DD/YYYY)

**DIAGNOSIS OR REASON FOR TREATMENT**



**NAME OF DECEASED**

MICHAEL RANERI

**CLAIM # (Internal Use Only)**

**POLICY / CONTRACT NUMBER**

J100011769

**POLICY / CONTRACT NUMBER**

**POLICY / CONTRACT NUMBER**

## MEDICAL FACILITY INFORMATION (continued)

List all hospitals or clinics where deceased was treated.

**MEDICAL FACILITY NAME**

**TELEPHONE NUMBER**   (include area code)

**STREET ADDRESS**

**CITY**

**STATE**    **ZIP**

**DATES OF CONFINEMENT**   (MM/DD/YYYY)

**DIAGNOSIS OR REASON FOR TREATMENT**

## REMARKS

**INFORMANT'S NAME**

**TELEPHONE NUMBER**   (include area code)

**SUBMIT THIS FORM WITH AN - HIPAA - COMPLIANT AUTHORIZATION FOR RELEASE OF HEALTH AND PERSONAL INFORMATION. IF DEATH WAS ACCIDENTAL, ACCIDENTAL DEATH QUESTIONNAIRE MUST ALSO BE COMPLETED.**

## STATEMENT OF CLAIMANT

I represent that the information shown above is accurate and complete. You may rely on it in acting on this claim. I have read the fraud statement, if applicable, for my state.

Sign Here _April Bun Run_     Date _3/18/2024_
CLAIMANT'S SIGNATURE

Print Name _April Bailey Raneri_

CLAIMANT'S NAME

DO-1592-CONT-190B

Page 4 of 4



## HIPAA-Compliant Authorization for Release of Health and Personal Information

I  April Bailey Raneri, the undersigned, hereby consent and authorize any health plan, physician, medical practitioner, health care professional, hospital, clinic, laboratory, pharmacy or pharmacy benefit manager, other medical or medically related facility, treatment facility related to drug, alcohol or substance abuse or use (including treatment provided by a federally assisted alcohol, drug or substance abuse program), or other health care provider that has provided payment, treatment or services to Michael Raneri                   ("the deceased") to disclose its entire medical record (including diagnosis, prognosis and treatment), prescription history, medications prescribed and any other health information concerning the deceased, ("protected health information") to Western-Southern Life Assurance Company, its reinsurers, or its authorized representatives (collectively "Company"). Protected health information includes information on the diagnosis, prognosis, or treatment relative to any physical, or mental condition, or treatment related to drug or alcohol use, or Acquired Immune Deficiency Syndrome (AIDS), AIDS-related Complex (ARC) and/or tests for antibodies to the Human Immunodeficiency Virus (HIV) and/or AIDS Virus (**HIV, AIDS, ARC or similar disease information is excluded in Arizona, Connecticut and Vermont**), but excludes psychotherapy notes.

I also authorize any insurance company or  insurance producer to which the deceased, had applied for or obtained insurance, MIB, Inc., any consumer reporting agency, employer, business associate, government unit, financial professionals, or other company or institution that has provided payment, treatment or services, or any other entity or person that has information about the deceased's health, occupation, avocations, finances, driving history, criminal record, aviation activities and general reputation, to disclose it to the Company or its authorized representatives.

The signature on page 2 acknowledges that any agreements the deceased may have made to restrict sharing protected health information, do not apply to this Authorization and I instruct any of Providers and other entities or persons referred to above to release and disclose the deceased's protected health information without restriction.

This protected health information is to be used or disclosed under this Authorization so that the Company may: 1) underwrite applications for coverage, make eligibility, risk rating, policy issuance and enrollment determinations; 2) obtain reinsurance; 3) administer claims and determine full responsibility for coverage and provision of benefits; 4) administer coverage; and 5) conduct other legally permissible activities, including mortality or morbidity studies, actuarial research or underwriting studies that relate to any coverage applied for with the Company.



## HIPAA-Compliant Authorization for Release of Health Information

This Authorization shall remain in effect for the duration of the claim in Virginia, 180 days in Arizona and 24 months in all other states, following the date of signature(s) below. A copy of the Authorization is as valid as the original. A signature on this Authorization transmitted electronically or via facsimile shall have the same force and effect as an original signature. I understand that I have the right to obtain a copy of and revoke this Authorization at any time by notifying the Company in writing at 400 Broadway, Cincinnati, Ohio, 45202-3312, Attention: Privacy Officer. I understand that a revocation is not effective to the extent that any person or entity has already relied on this Authorization to disclose or use information about the deceased or to the extent that the Company has a legal right to contest a claim under an insurance policy or to contest the policy itself. I understand that if any of the deceased's protected health information is re-disclosed, it may no longer be protected by federal rules governing privacy and confidentiality of health information, however, state law may protect it. I further understand that if I refuse to sign this Authorization, the Company may not be able to process the application, or if coverage has been issued, may not be able to make any benefit determinations or payments. I understand that I or any authorized representative will receive a copy of this Authorization.

Insured Social Security Number          Insured Date of Birth

Signature of Personal Representative          Date          Policy Number

3/18/2024          JI00011769

April Bailey Raneri
Print Name of Personal Representative

Spouse
Personal Representative's relationship to Insured

Not valid without all pages.



STATE OF FLORIDA
THIS DOCUMENT HAS A LIGHT BACKGROUND ON TRUE WATERMARKED PAPER. HOLD TO LIGHT TO VERIFY FLORIDA WATERMARK.
## BUREAU of VITAL STATISTICS

# CERTIFICATION OF DEATH

**STATE FILE NUMBER: 2024028024**

**DATE ISSUED: FEBRUARY 29, 2024**

**DATE FILED: FEBRUARY 22, 2024**

**DECEDENT INFORMATION**

NAME: MICHAEL JOSEPH RANERI

DATE OF DEATH: FEBRUARY 12, 2024     SEX: MALE     SSN:     AGE: 041 YEARS

DATE OF BIRTH:     BIRTHPLACE: PORTALES, NEW MEXICO, UNITED STATES

PLACE OF DEATH: INPATIENT

FACILITY NAME OR STREET ADDRESS: SOUTH SEMINOLE HOSPITAL

LOCATION OF DEATH: LONGWOOD, SEMINOLE COUNTY, 32750

RESIDENCE: 10912 HIGH BUSH CT, ORLANDO, FLORIDA 32825, UNITED STATES     COUNTY: ORANGE

OCCUPATION, INDUSTRY: DISPATCH SUPERVISOR, SHIPPING

EDUCATION: ASSOCIATE DEGREE     EVER IN U.S. ARMED FORCES? NO

HISPANIC OR HAITIAN ORIGIN? NO, NOT OF HISPANIC/HAITIAN ORIGIN

RACE: WHITE

**SURVIVING SPOUSE / PARENT NAME INFORMATION**

**(NAME PRIOR TO FIRST MARRIAGE, IF APPLICABLE)**

MARITAL STATUS: MARRIED

SURVIVING SPOUSE NAME: APRIL BAILEY

FATHER'S/PARENT'S NAME: DANIEL JOSEPH RANERI

MOTHER'S/PARENT'S NAME: RACHEL YATOVITZ

**INFORMANT, FUNERAL FACILITY AND PLACE OF DISPOSITION INFORMATION**

INFORMANT'S NAME: APRIL RANERI

RELATIONSHIP TO DECEDENT: SPOUSE

INFORMANT'S ADDRESS: 10912 HIGH BUSH CT, ORLANDO, FLORIDA 32825, UNITED STATES

FUNERAL DIRECTOR/LICENSE NUMBER: BRYAN J. ELLISON, F658736

FUNERAL FACILITY: BERGEN FUNERAL SERVICE INC F039698

3107 DAVIS BLVD, NAPLES, FLORIDA 34104

METHOD OF DISPOSITION: DONATION

PLACE OF DISPOSITION: SCIENCE CARE ANATOMICAL

CORAL SPRINGS, FLORIDA

**CERTIFIER INFORMATION**

TYPE OF CERTIFIER: CERTIFYING PHYSICIAN     MEDICAL EXAMINER CASE NUMBER: NOT APPLICABLE

TIME OF DEATH (24 HOUR): 0811     DATE CERTIFIED: FEBRUARY 21, 2024

CERTIFIER'S NAME: ANTONIO LAZARO RODRIGUEZ

CERTIFIER'S LICENSE NUMBER: ME61778

NAME OF ATTENDING PRACTITIONER (IF OTHER THAN CERTIFIER) NOT APPLICABLE

**CAUSE OF DEATH AND INJURY INFORMATION**

MANNER OF DEATH: NATURAL

CAUSE OF DEATH - PART I - AND APPROXIMATE INTERVAL: ONSET TO DEATH

a. ANOXIC ENCEPHALOPATHY

b. SUDDEN CARDIAC DEATH (UNKNOWN ETIOLOGY)

c. ATHEROSCLEROTIC HEART DISEASE

d. HTN

PART II - OTHER SIGNIFICANT CONDITIONS CONTRIBUTING TO DEATH BUT NOT RESULTING IN THE UNDERLYING CAUSE GIVEN IN PART I

AUTOPSY PERFORMED? NO     AUTOPSY FINDINGS AVAILABLE TO COMPLETE CAUSE OF DEATH?

DATE OF SURGERY:     DID TOBACCO USE CONTRIBUTE TO DEATH? NOT STATED

REASON FOR SURGERY:

PREGNANCY INFORMATION: NOT APPLICABLE

DATE OF INJURY: NOT APPLICABLE     TIME OF INJURY (24 HOUR):     INJURY AT WORK?

LOCATION OF INJURY:

DESCRIBE HOW INJURY OCCURRED:

PLACE OF INJURY:

IF TRANSPORTATION INJURY, STATUS OF DECEDENT:     TYPE OF VEHICLE:

,STATE REGISTRAR

REQ: 2026242691

WARNING: THE ABOVE SIGNATURE CERTIFIES THAT THIS IS A TRUE AND CORRECT COPY OF THE OFFICIAL RECORD ON FILE IN THIS OFFICE. THIS DOCUMENT IS PRINTED ON PHOTOCOPIED ON SECURITY PAPER WITH WATERMARKS OF THE GREAT SEAL OF THE STATE OF FLORIDA. DO NOT ACCEPT WITHOUT VERIFYING THE PRESENCE OF THE WATERMARKS. THIS DOCUMENT FACE CONTAINS A MULTICOLORED BACKGROUND. GOLD EMBOSSED SEAL, AND THERMOCHROMIC FL. THE BACK CONTAINS SPECIAL LINES WITH TEXT. THIS DOCUMENT WILL NOT PRODUCE A COLOR COPY.

DH FORM 1947 (08/01/2022)

CERTIFICATION OF VITAL RECORD

*61451647*



 Western & Southern Life

INSURANCE | RETIREMENT | INVESTMENTS



400 Broadway
Cincinnati, OH 45202-3341
513.629.1800
WSLife.com

September 4, 2024

APRIL RANERI
10912 HIGH BUSH CT
ORLANDO FL 32825

RE: The Western Southern Life Assurance Company
Policy: J100011769
Insured: Michael Raneri

Dear Ms. Raneri:

We offer our heartfelt sympathies for the passing of Michael Raneri ("Mr. Raneri"). We have completed our review of your claim and, for the reasons outlined below, are unable to approve payment of death benefit for the above referenced policy.

The policy contains the following provisions:

**Incontestability**

We cannot contest coverage after the policy has been in Force during the lifetime of the Insured for two years from the Policy Start Date and, with respect to any coverage that has been reinstated, for two years form the date of reinstatement except for failure to pay premiums.

**Entire Contract**

We have relied upon the application(s) in issuing this policy. All statements made in the application(s) are assumed to be true to the best of the knowledge and belief of the person(s) making them. These statements, in the absence of fraud, are deemed representations and not warranties. No statement will be used to void this contact or contest a claim unless it is a material misrepresentation contained in an application. If any statement in any application(s) is not true or complete, You must tell Us.

Further, as stated on the signature page for the Application for Individual Life Insurance to the Western and Southern Life Assurance Company ("Application"), by signing the application, Mr. Raneri acknowledged:

I understand and agree that:

A. Based upon the manner in which this Application for Life Insurance and all supplements was taken, I have either read each section of it or had each

The Western and Southern Life Insurance Company
Western-Southern Life Assurance Company

**EXHIBIT C**

section read to me. I have been given the opportunity to have any section repeated or any corrections made, if necessary;

B. I have carefully reviewed all statements and answers in this Application for Individual Life Insurance all supplements, amendments, and overflow page(s) are true and correct to the best of my knowledge and belief;

C. This Application for Individual Life Insurance an all supplements will be attached to and make part of any policy issued:...

The application was signed by Mr. Raneri on November 7, 2023. The policy was issued with a Policy Start Date of November 7, 2023. Mr. Raneri passed away on February 12, 2024. Because Mr. Raneri passed away within two years of the Policy Start Date, the policy is considered contestable and a routine review was completed.

The application contained the following medical questions:

2. What is your current weight? Weight (lbs)

Mr. Raneri answered 230 in response to this question.

During our review of this claim, we obtained medical records from Orlando Health Inc.

Medical records from Orlando Health Inc., dated August 13, 2023, document that Mr. Raneri weighed 271 pounds. This information was not admitted in response to question 2 under the Medical Information section of the application.

Had this information been known at the time of application, the policy would not have been issued as applied for. The omission of this information constitutes a material misstatement that warrants a rescission of the policy. A rescission of the policy is the same as if it were never issued.

In conclusion, based on, but not limited to the information set forth above, we are unable to approve this claim due to material misstatements having been made in the application. Based upon the foregoing, our only contractual liability for the claim against this policy is for the refund of premiums paid, which amounts to $232.36. A check representing this amount is enclosed. **By cashing the check, you agree to rescission of the contract. The Company will have no further liability under or related to the policy.**

This is our final determination. Nevertheless, we invite you submit, for review and consideration, an additional materials that you believe warrant a contrary decision. Please contact me at 1-800-333-5152, ext. 6448 is you have any questions. In the meantime, the Company reserves all rights under applicable law.

Sincerely,

Jayna Thompson
Manager - Claims Administration